Mr. Allen. May it please the Court, Thomas Allen of Jones Day for Appellant, Family Rehabilitation, Inc. The question before the Court is a narrow one. Did the District Court have subject matter jurisdiction over any of Family Rehab's claims below? The Court did, notwithstanding Family Rehab's inability to exhaust its administrative  Scalia. Which means, is this collateral? Yes, Your Honor. That's the question. That is the certain question. Is this collateral? They have jurisdiction? If not, they don't. I agree, Your Honor. And that would take us to the Matthews v. Eldridge doctrine, which does require — which does provide that a plaintiff may assert claims notwithstanding its inability to exhaust, if those claims are collateral and there's been a colorable claim of irreparable harm. So to your question, Judge Riedley, we have asserted two claims that are collateral. Deprivation of procedural due process and the government's ultravirus inability or, rather, refusal to comply with its mandatory statutory obligation to grant us an ALJ hearing within 90 days. Those claims — the basis for those claims is procedural. As I said, under the statute, the ALJ shall conduct and conclude a hearing and render a decision within 90 days. There is no dispute that deadline was not met. It passed on January 22nd. If the government was following its own rules, we'd be done already. There's no dispute that what should take 90 days under the statute now takes anywhere from three to five years. And there's no dispute, incidentally, that the violations that the agency and CMS have accused Family Rehab of are, at most, technical violations. There's no question that these services weren't actually provided, no allegations of fraud. So when you look at the pleadings of these claims, they ask whether the procedural conundrum Family Rehab finds itself in, that the government denies us an ALJ hearing within the time frame that Congress has required, while simultaneously recouping funds from us and driving us out of business, whether that violates the Constitution or is ultra-virus. These are premised on an entirely different set of facts and issues than the underlying administrative dispute. They do not concern whether the payments were proper, whether the administrative extrapolation method by the government contractors was flawed, whether Family Rehab may have made clerical errors. None of those are at issue here. And that is the analysis in Matthews v. Eldridge. That's the analysis in City of New York v. Bowen. And most notably, that is the analysis in the D&G Holdings case, which was described at length in the district court opinion and, as we noted in our reply brief, was agreed with by a panel of this Owen on a related mandamus proceeding. And the difference, and in response, the government relies primarily on the affiliated professional case, which held that the claims there were not collateral. But a review of that case demonstrates why. Those claims, as the Fifth Circuit recognized, required the, would have required the court to dig into the merits of why that provider's privileges were being terminated. This was a termination case. And the provider was asking the court to rescind that termination, as well as stop the withholding of payments. So in that, according to the terms of the provider's claims, that was absolutely administrative. According to the government, however, if, because our claims are related somehow to the Medicare statute, they are administrative in nature, and it seizes upon that phrase from affiliated professional. But we submit that overreads affiliated professional. If any claim arising from rights under the Medicare Act were administrative in nature, then everything is administrative in nature. And that erases the distinction between collateral and non-collateral claims. So we submit under the D&G Holdings analysis, as well as the first principles articulated in Matthews and Bowen, these claims do meet the collateral test. I'd like to move on and discuss for a moment the other component, which is the colorable claim of irreparable harm. Family rehab met that prong to establish that it does face irreparable harm while it languishes in perpetual administrative limbo. Going out of business is a cognizable interest. That was the observation and the ruling by this court in D&G Holdings. But we did more than that. We talked about harm to our employees, harm to our patients, some of which has already come to pass, some of which will come to pass further if we are finally driven out of business. Now, the government in response tends to trivialize that harm in saying, oh, well, you're just going out of business. But as we said, that is something, a harm that the court takes seriously and can view as irreparable, particularly when coupled with other alleged harms. The government's other principle tactic is to invoke the mechanism of administrative escalation. As the court knows, that is the mechanism by which a provider can skip ahead from one phase of the administrative appeals process to another if certain deadlines are not met. The government holds this up as having some sort of talismanic significance, as if it would wash away all the harm that has befallen us. But that's not an answer. An escalation is not an option. It is not a mandatory requirement for us. It is an option for the provider. It's our choice. And we chose — we did not choose that choice because of the consequences of escalation. First we would skip from the third stage to the fourth stage, the appeals counsel. But that is backlogged itself. I think the last time we checked, there are at least 15,000 pending appeals at stage number four. Also at stage number four, we don't get the same process. There is not the right to a hearing the way there is at the ALJ stage. Hearings are only granted under extraordinary circumstances. And that's really the rub here. Escalation requires us to forfeit a right that Congress has guaranteed us, a right to a hearing before an ALJ. And why is that important? Because that is our best chance to make our case. It allows us — it gives us the right to a de novo live hearing before a truly neutral decision maker where we can present live testimony. For example, providers would — may call clinicians to walk the ALJ through the medical records and explain why the purported technical defects don't really support the contractor's conclusions about overpayment. And so it's not a surprise that the reversal rate at the ALJ stage is materially higher than it is at the first two government contractor stages. There are all kinds of statistics out there, but the D.C. Circuit was right when it acknowledged that that reversal rate was hardly negligible. A quick note, the government also faults us for not pursuing a payment plan, which is another option, not a requirement for us. But this is no answer either. First, it ignores the fact that the government doesn't have to recoup these funds. It chooses to do that. So its hands are not tied here. Second, the longest payment plan is five years long. There's no dispute about that. And we made clear to the district court that we couldn't float a debt in excess of $7 million over that short a period of time. So and in any event, now by statute in the CMS's own manual, we're not even eligible for a plan because it says that a plan won't be given if there's any reason to believe the provider might go out of business. We've said very clearly we're going out of business if we can't get at least a chance to get it to an ALJ. I'd like to switch gears and address briefly Mandamus. The district court was also wrong to conclude that Mandamus jurisdiction was absent because family rehab couldn't exhaust its administrative remedies. But exhaustion is not part of the jurisdictional test in this court. And Walcott is really the lead case here. And it makes clear that the test is only whether the action is one to compel an officer to perform an allegedly non-discretionary duty. We certainly made that clear to the district court. We explained repeatedly, page 318 of the record, for example, that the government had failed to perform its non-discretionary duty to grant an ALJ hearing and issue a ruling within 90 days. We pleaded Mandamus jurisdiction in our complaint. And at the hearing, we asked for the 90-day deal. That was very clear to the government, I mean to the district court. And we made clear that we were asserting the violation of a non-discretionary duty. The government doesn't even really seem to dispute that this is anything other than a mandatory duty. And again, the D.C. Circuit's opinion in American Hospital Association 2016 explains why. The statute, section 1395 FFD1A, speaks in mandatory terms. It provides that the administrative law judge shall conduct... Just as a jurisprudential practical matter, what if every court in the country mandamused the system that you've got to hear this in 90 days, and they're saying we can't hear them within three to five years, or three years. How does that work? Well, I agree that that is a question. And that's a question that the D.C. Circuit has been grappling with as they've been sort of looking at this on a system-wide basis. In our view, first of all, our entitlement to Mandamus relief, and what form that Mandamus relief might take on remand, is separate from the jurisdictional question here. And it's an inherently equitable remedy, so that the district court could have flexibility. In our view, the district court might have a couple of options. I don't want to try to predict exactly how that will all go. It might go on remand, but the district court could order the 90-day hearing. Or it could say, all right, government, if you're not able to or willing to provide that hearing, despite Congress's clear command, then stop recouping. And that might be another way that the district court could go. I agree that given the systematic problems with the Medicare appeal system, we are one of thousands and thousands of providers who've been caught in this system. And so it doesn't present an easy question on remand. But I would submit that that's the proper place to first take it up. But I do think the court would have some flexibility there. So a word, again, about the mandatory nature of the courts, of the government's obligation to provide this hearing. Escalation, again, does not make this any less mandatory. Again, the D.C. Circuit discusses this. Escalation is an option to providers, and it merely is an acknowledgment of the consequences of the government's noncompliance. But that doesn't undermine, as the court said, the force of that command. And particularly here, given the widespread problems, Judge Owen, that you pointed out, there's no way that Congress viewed escalation as an adequate remedy, especially where this systemic failure causes virtually all appeals to be decided outside the statutory deadline. So a final word. As we explained in our briefs, we brought the mandamus issue clearly to the district court's attention in our pleadings. And in the hearing, there was no question about that. And so we don't think that there's, in any event, any basis for the court to affirm on that basis, on the basis of the purported pleading defects that the government has argued in its brief. In the time I have left, I would just like to say a couple of words about the Illinois Council Doctrine. And the starting point there is the MaxMed opinion that was recently issued. Judge Owen was part of the panel. It correctly diagnosed this problem. It acknowledged that this is a profoundly broken system in which many providers have no hope of ever finishing the administrative cycle, a cycle that's supposed to take about a year, start to finish, and now is taking multiple years, even by some estimates, a decade. So it's in this context that Family Rehab invoked the Illinois Council Doctrine. In Physicians Hospital, this court spoke of serious practical roadblocks to administrative or judicial review. And here, that roadblock exists. It denies providers, just like us, the process Congress guaranteed. Now, the government says, well, that's just only so much delay and administrative hardship. But here, Congress limited the duration of that delay and hardship. And so, under that rubric and against that context, we cited this doctrine. If the Court has no more questions, I will give back the balance of my time. Yes, you've saved time for rebuttal. Thank you, Your Honor. Thank you. Mr. Stolz? Thank you, Your Honor. May it please the Court? The District Court did not err in determining that jurisdiction was lacking for the lawsuit filed by Family Rehab. And I'd like to first address the issue of whether these claims were collateral. There's two reasons, in particular, why these claims were not collateral. The first is, the District Court correctly looked at the actual relief that Family Rehab was seeking. And that relief was in the nature of essentially requiring Medicare to turn back on certain payments administratively. And as this Court's decision in Affiliated teaches, when a relief is administrative in nature, that is not something that's considered collateral. Now, second, in the Affiliated Professional Opinion, the Court went on to say that, additionally, the provider in that case was also seeking relief that was mixed in with the merits of its decision. So the Court suggested that that fact, that the relief was mixed in, was an additional reason that the claim could not be placed in the federal courts at that time. But sufficient alone was the fact that the relief was administrative in nature. Here, though, just like the claim in Affiliated Professional, the claims that Family Rehab presented were also mixed in with the merits of the matter that is pending at the agency. What would be an example of requested collateral relief? Requesting collateral relief, well, an example, I guess, would be in the Matthews v. Eldredge decision itself, which was where the disability recipient was being terminated. So we had a termination, which is not at issue here. And there was, the Supreme Court determined that there was jurisdiction to entertain this claim about when a hearing should occur. Now, the Supreme Court, I think, was careful, though, and never in Matthews approved of the sort of action that Family Rehab is presenting here. And also in the Bowen v. City of New York case, the Supreme Court was careful to note that the exercising jurisdiction in that case, also involving disability recipients, was respectful of the administrative process and that the district court had not ordered any claims paid. Here, though, we have the opposite, which is that there has been a request that basically these funds be turned back on. And if you look on page 25 and 26 of the record, which is paragraph 81 and 82 of the complaint, this is the procedural due process claim itself. The count that is labeled procedural due process, which is the count that they're primarily arguing here there's jurisdiction for. If you look at that, it says, quote, that the procedures utilized are Explain to me, let's assume that there are current Medicare, Medicaid claims that are completely valid and that the government would otherwise pay. How is ordering the government not to recoup out of those funds ordering funds to be paid? I mean, they would pay them anyway. It's just the reason they're not paying is they're kind of trying to recruit past issues. So is that really the same thing? Well, recoupment, what recoupment is, is the agency is saying, we're not going to make payments to you until this existing debt that has been assessed against you is discharged. So Exactly. Even though you're otherwise entitled to them, we're offsetting basically a pre-existing debt. So it's, it's the recoupments that's being stopped, not ordering the government to pay disputed, otherwise disputed Medicaid or Medicaid claims. Well, I think functionally though, it's, it's the same, you know, it's the flip side of the coin. If you're saying you may not recoup, what you're then saying is therefore you have to pay. And if you look at the actual proposed order that is, you know, submitted in the record that a motion for temporary restraining order, the order, you know, is asking the court to basically order the agency to make these payments and not recoup. So it is, if you're making a payment, then you're, you're not recouping. So I think it's, I think it's all mixed in together. And in fact, the, the procedural, getting back to the point of, in addition to the fact that the relief is administrative in nature, which is one reason, you know, by itself that this is not a collateral case, there's also the fact that the claims are mixed in with the merits. And for example, paragraph 81 and 82 of the complaint, they specifically rely on the fact that they say their claims are meritorious and will be successful. And therefore, because their claims are meritorious in their view, you know, the government, the court should intervene. So they're relying on what they're asking the district court to find about the merits of these underlying Medicare claims. Likewise, in their motion for a temporary restraining order, they argued that they were the proper certifications and the proper face-to-face evaluation forms that are required in order to establish an entitlement to payment. So they asked the district court, they told the district court, we are, we are likely to succeed on those claims. And they asked the district court to find that they were likely to be able to establish that the physicians had completed the proper. For the past. For the past claims, yes. Is there any, any problem ongoing that, that there's a dispute now as to whether they're in compliance going forward? I'm not sure about that. I don't, I don't know that they're, I don't know the nature of their claims that, you know, for example, if they're, if they're treating the new patient today and they've submitted a claim for it, I have no, I don't know if there's, if that's been reviewed, I know nothing about that in terms of. So it could be that the government would pay it and say, there's not a problem at all. It's just, we want to get our money. Yes, Your Honor. It's the way recoupment would work is that if, if they did submit claims that they were. And a stay would not change that situation. It would just say, you're going to have to wait to see if you get your money by virtue of recoupment until there's been a hearing. Well, I think it would change the situation. You're not making the government pay. It's not clear to me at all that you're making the government pay something they wouldn't otherwise pay. You're just saying you cannot proceed with recoupment until there's a hearing. I think I understand the point, but the, but the recoupment is what essentially, the government, the recoupment exists. And so the, by, by nature of the recoupment, there are not going to be payments made. And so the government is not going to be making payments. And so if you say, if, if the court enters some kind of order forbidding recoupment. Well, but the whole system is you're going to get this resolved in 90 days. The recoupment, it's hand in glove. It's supposed to work so that recoupment doesn't go on for two or three years and put you out of business. You're supposed to get a 90 day or that piece of the, of the, was it a five step process? It's supposed to take 90 days and that's not happening. There's a, so there's a four step process. Congress has specifically spoken in the issue of when recoupment can occur. And Congress has basically said, there's not going to be recoupment at the second level of the process and the agency. So basically there's no recoupment during the first and second levels of the process. Congress then has, has not prohibited recoupment from occurring once you get past the second level of the. But the third process stage is supposed to be over 90 days. That's true. So the statute does say that the ALJ is supposed to hold a hearing and issue a decision in 90 days. But in the exact same statute that they're relying on for this 90 day requirement, and we don't dispute that there is a 90 day, you know, in the statute, it does say that. In the same exact statute though, it also says consequences of failure to meet that deadline or something of that nature. And Congress, anticipating this sort of situation, has specified what the remedy is. And the remedy is that this escalation option then springs into existence where the provider can choose to escalate and proceed through the system. Congress, again, it's all in the same statute where issues like recoupment and the 90 days is dealt with. Congress did not say that a, and they could have said, but they did not say that a failure to meet the 90 day deadline means that recoupment has to stop. They didn't say that. Congress also did not say that, you know, a failure to meet the 90 day deadline or a threatened failure to meet the 90 day deadline means that a provider can immediately come to federal court and attempt to obtain some sort of interim relief. In fact, Congress said that if you don't meet the 90 day deadline for an ALJ, and then also, the final step, which is the Medicare Appeals Council, or escalating from them if they don't make a timely decision, at that point, the provider can then go to federal court. Jurisdiction exists at that point. So I think by, you know, the fact that Congress did not, you know, Congress knows how to specify how these Where does the provider get the opportunity to put on evidence and have an evidentiary hearing if they escalate? Yes, Your Honor. So if a provider thinks it's not going to receive an ALJ hearing within 90 days and wants to preserve that evidence, there's several things they can do. One, essentially it would be no different than if an ALJ did hold a hearing and, for example, in this case, there was a paper review. And they said, look, we've asked for your records and you have not submitted to us, you know, the certification form. It's not here. We can't pay you without the certification form. If an ALJ said, I'm not going to listen to this evidence about what your doctors are saying because it's not relevant to the issue of whether or not you have the certification form. So you can imagine a situation where the ALJ just said, I don't want to hold a hearing or I'm not going to entertain this evidence. It would be the same. And in that situation, if family rehab believed that this was erroneous, they could create a record. They could make an offer of proof. They could submit written declarations or written testimony. They could videotape their witnesses, you know, under oath in a deposition type setting and submit that video to the agency. Then, after escalating, they could invoke their escalation, you know, options. They could proceed to federal court in the manner Congress has anticipated. Once in federal court, that evidence would be part of the record. And they could certainly argue that by failing to hold a hearing in 90 days or by not allowing them an opportunity to present that evidence, at that point the evidence would be in the record and they could make arguments to the district court that this then was an error and that the district court should then craft some sort of whatever appropriate relief there would be. And it would be at that point, that is the point that the district court has jurisdiction under the system, you know, that Congress set up as intended. So if they take that route, how long will that take? It would take approximately six months, I believe. Under the current circumstances? Right. So they could escalate away from the ALJ now. You know, as of when they filed the lawsuit, it was only about seven days after they had requested their ALJ review. So the 90-day period has now expired. So they are eligible to escalate now. So tomorrow they could send Medicare or send the ALJ office a package containing every piece of testimony they wanted to hear to have heard. They could send in a videotape. They could send all that in. They could say, we're triggering our escalation options. This is the evidence we would have liked to have presented. Then they would either have, you know, the final decision maker, which is the Medicare Appeals Council, has, I believe, 90 to 180 days to make a decision. Are they current? My understanding is that there is some backlog. How much? I'm not 100% sure on that, Your Honor. I do know that if they don't act timely, then under the statute, the provider could once again escalate. At that point, you would be in federal court. So I think what the district court says is that they could be in federal court within 90 to 180 days. It's in the district court's decision. And we don't dispute that. They could be in district court properly under the system. Well, they just got through saying at some point that it's their understanding at step four that they don't, that that's an extended period of time, that they're behind as well. I'm not 100% sure what the statistics are on the fourth period as to how backlogged they might be. And I'm not disputing that there may be some backlog at the fourth level. I don't think it's anything like at the ALJ level, but there may be some backlog. But if there is a backlog, and assuming there is, there's also an escalation option. So you can, once the period of time for the fourth level expires, you can then proceed into federal court, just like you can escalate from the ALJ level. And as counsel mentioned, and I don't think we dispute, the fourth level is the Medicare's Appeals Counsel, and they're, I think, unlikely to hold a hearing. So they're not, there's no issue, there's no contention that they would actually have a hearing with oral testimony. But what they could do is put all this evidence in the record now, escalate, and they could then properly be in federal court within, essentially, the anticipated periods under the statute. Because you'd either have a decision within the 90 days, or you'd immediately escalate. So Congress has spoken to this issue. Congress, it's absolutely true that Congress put these 90-day deadlines in the statute. But it's also absolutely true that at the very same time they did that, they created the escalation provision. And they did not allow for providers to come into federal court immediately upon missing a deadline at these intermediate stages. And why would, you know, this is Congress's judgment about how this massive, comprehensive system of Medicare is supposed to work. And it's a big system, and there's a lot of things going on. And there's, you know, Congress makes decisions on how best to do this. And what Congress has decided to do is to delay federal court jurisdiction until after, you know, the completion of an administrative process. And they've built in things like the limitation on recoupment during the first two stages. They've built in things like the ability to request a repayment plan, which they simply have unilaterally declared that they're not, you know, not even going to try to get one of those. That's something that Congress has put in to temper this notion that there's going to be a period of time where, you know, money is recouped or you need to repay money. So what family rehab is essentially asking to do is to come in and interject a federal court into the middle of this process to make findings about, you know, whether family rehab is going to be done, whether the appropriate paperwork is in the file. And that's the sort of thing that Congress, you know, does not want to happen because Congress has delayed jurisdiction. So the claim is not collateral. It's intertwined, you know, it's intertwined with, you know, the merits of these claims for payments. It seeks administrative relief. I want to briefly mention Mandamus. Council relies on the Randall Walcott decision. The Jones v. Alexander decision, which we cite in our brief, is an earlier decision. So that would actually control to the extent there may be some conflict. I don't think there's a conflict. I think that the there's a subsequent decision that we cite called Maringo v. Mukasey, where this issue of failing to exhaust can be considered part of the jurisdictional analysis. And at the end of the day, I don't think it's even really necessary for the court to wade into all this issue of whether it's a merits Mandamus issue or a jurisdictional issue for a couple reasons. One, Mandamus is not available here, at least in the form that they've requested. In their appeal brief, they've requested a writ of Mandamus to require the agency to hold a hearing within 90 days. But the courts have sort of unanimously rejected the idea that you can offer this individualized Mandamus relief. And for the reasons alluded to, you know, it would simply be unworkable across the entire program. It would move one provider to the front of the line and then encourage all the other providers to do the same thing. And at the end of the day, there would be no net gain. So it was certainly not error for the district court to say that Mandamus was not available in this case. And that's particularly true because if you actually look at the complaint, there was no actual request for Mandamus. And they've tried to characterize this as a pleading, a technical pleading defect, but it's not that. The cases they cite are cases where a party, for example, either requests leave to file an amended complaint in the district court and is denied. And then on appeal, this court says, no, you should allow them to amend. Or one of the cases they cite is a case where the party cited admiralty jurisdiction and they really should have been proceeding under the Outer Allegation. You know, you can go in and amend your complaint to do the correct statute. That's not what we have here. What we have here is an attempt to essentially recast their claim and the nature of the relief sought entirely. And it's essentially occurring for the first time on appeal and particularly in the reply brief. But I don't think that's a barrier to this court affirming because... Well, you can understand their frustration with the delays that are now in the system that Congress, we assume, had not anticipated. Your Honor, I certainly do understand the frustration, and I'm not trying to minimize. They've sort of said that we've been dismissive of that, and I'm not. And we're not. We recognize that there's an issue here. And in fact, the D.C. Circuit has now had two appeals and there's long-running litigation in the D.C. Circuit about what, if anything, courts should do on a program-wide basis to address this issue. And the agency is working in the context of that litigation and also just on its own to try to come up with a program-wide solution. And also working with Congress. And that's detailed in our briefs. And I think this court, in the recent MaxMed decision, noted that Congress essentially, there's been requests for more funding. So, again, I'm not trying to minimize anything for any provider, but in the scheme of a huge program like this, there's just no basis for granting the very individualized relief that they're seeking. What do you do about the question of irreparable harm in terms of an entity that says, let's assume they say it in good faith, that they're going to go out of business because of the delays? Well, Your Honor, I think that there's, you know, this court has talked about this in the, for example, the Physician Hospitals case where the entity said, the only way we, you know, we're in the middle of this $30 million project and there's, it may be that that entire project is essentially illegal under the Medicare statute. And we need to be able to test that by, you know, basically coming to court now. And what this court said is, basically, sorry, you have to exhaust. And that's the system that Congress created. So there's no doubt that in some cases it could be, you know, that there's these economic injuries. But at the same time, this is what Congress, this is the way Congress has structured the system. And Congress has also provided things like repayment plans, things like escalation to alleviate that. So I think where they haven't even, by their own admission, they've essentially refused to engage in any of those processes that Congress has provided, then I think they haven't shown irreparable harm here. So thank you, Your Honor. Thank you, Mr. Stoltz. Mr. Allen, you save time for rebuttal. Thank you, Your Honor. Just a few points. First, the government says that we are not trying to be respectful of the administrative process. We are. We're trying to get administrative review, not evade it. With regard to their discussion of whether our claims are collateral and they take issue with some of the briefing in the district court, I would offer a couple of observations. First, in the district court, we were arguing a variety of claims, including substantive due process, which we do not contend is a collateral claim. This also occurred in the context of a lawsuit that lasted all of three days. There was no Rule 12 motion or any other discussion about that below. But when you look at the procedural due process and ultra virus claims, they are premised on a procedural problem, the government failing to follow its mandatory statutory duty while still threatening to recoup. What's your answer to the procedure he described? He made it sound like if you escalated, you could resolve this in short order and get to federal district court. What was wrong with what you heard him describe to us? A couple of things. First of all, escalation to the appeals council, stage number four, is also backlogged. How do we know that? Where is that in the record? I think we cite some materials both in the record and in our briefs. And I'd be happy to provide the court with any update. I think we looked recently and saw that it was at least approximately 15,000. There are 15,000 cases filed in courts. That doesn't mean they're backlogged for 10 years. But that they don't have the capacity. I think it's undisputed. That doesn't tell us how long the backlog is, how long it takes. I believe in our opening brief, we cited sources that said that there was this enormous backlog that the DLJ stage and the appeals council stage could not keep up. And so it could take anywhere from 10 years to even a decade for CMS and the agency to clear its backlog. I'd have to look at the brief to see exactly what those sites said. But it's a period of multiple years. And that's been a lot of the dispute in the D.C. Circuit case. Because originally, the court in that case ordered the agency to clear its backlog. And there's been a question. And the agency now, as I understand it, has been going back to the court and saying, well, it's impossible for us to do this on the time frame you've given us. But that's the ALJ, right? Well, there's backlog at ALJ and there's backlog at the appeals council. Another thing about the appeals council is that even if we were to escalate today, as opposing counsel suggested, the appeals council, as I understand it, would still have 180 days to rule. And so there would be another delay. Then, if they didn't rule, they offer the option of going to district court. The appeals council, as I mentioned earlier, also doesn't provide us a hearing. And as we all know, there's really no substitute for a live hearing and the interplay of human beings explaining the questions at issue. So there's almost never a hearing, only under extraordinary circumstances, at stage number four. At stage number five, yes, you can find yourself in district court, but that's not a de novo proceeding. That's reviewed under substantial evidence and it's limited to the administrative record. So that's not a substitution for an ALJ hearing either. The ALJ hearing is what Congress guaranteed us, and it's really what we want here, and we just can't get it. In his discussion of whether this is collateral, Mr. Stoltz said that part of the relief that you're asking for is for payments to be resumed, and that for that reason it's not purely collateral or maybe not collateral at all. Would you address that? As I understand those claims, they were pleaded before recoupment ever started. The family rehab asked for a TRO to stop recoupment. And so what they were asking the district court to do was enter an order telling the contractors, CMS and the agency, not to start recouping at all. That's what we asked the court to do, and because the court dismissed sua sponte for lack of jurisdiction, we didn't get the order, and recoupment started. And incidentally, it's not just recoupment. The government now referred this alleged overpayment to the IRS. So the consequences are grave for our client. But I must say I take issue with the notion that these claims are collateral or not collateral, and I submit, if I can finish my answer, Your Honor. Just a sentence, if you may. They're not collateral because they don't require and they would never require the district court on remand to resolve the underlying administrative dispute. They only address the procedural conundrum we find ourselves in because the government won't follow its own rules. Thank you. Thank you, Mr. Allen. Your case is under submission.